**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CONTRACTOR TECHNOLOGY, | § | Bankruptcy Case No. 05-37623-H1-7 |
| LTD., | § | Adversary Number 06-3528 |
|     Debtor. | § | |
| _____ | § | |
| | § | |
| HIRSCHFELD STEEL CO., INC., | § | **CIVIL ACTION NO. H-07-2281** |
|     Appellant. | § | |

**<u>MEMORANDUM AND ORDER</u>**

Appellant Hirschfeld Steel Co., Inc. ("Hirschfeld") appeals from the United States Bankruptcy Court's April 16, 2007 Memorandum Opinion ("April Opinion") and the corresponding June 14, 2007 Final Judgment. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's decision.

**I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Debtor Contractor Technology, Ltd. ("Contractor Technology") was the prime contractor on public works projects in Texas, including a road and bridge project referred to as NASA-1. St. Paul Fire and Marine Insurance Company ("St. Paul") was the surety with whom Contractor Technology executed payment bonds as required by Chapter 2253 of the Texas Government Code ("Payment Bond"). Contractor

Technology filed a petition in bankruptcy on May 13, 2005, and the case was converted from Chapter 11 to Chapter 7 in June 2005.

Hirschfeld was a subcontractor on the NASA-1 project, responsible for fabricating structural steel girders. Contractor Technology paid Hirschfeld $268,073.00 on May 12, 2005, but the check did not clear until after the bankruptcy petition was filed. The Bankruptcy Trustee sent a letter to Hirschfeld in September 2005 requesting return of the $268,073.00 as an avoidable post-petition transfer pursuant to 11 U.S.C. § 549.

In February 2006, Hirschfeld and St. Paul entered into a Ratification Agreement whereby St. Paul undertook completion of the NASA-1 project with Hirschfeld continuing to serve as one of the subcontractors. St. Paul agreed to pay Hirschfeld "in accordance to the terms and conditions of the Purchase Order" and the parties agreed as a term of the Ratification Agreement that the amount due was $292,733.40. Upon payment of that specified amount, Hirschfeld released St. Paul from any claims arising against the Payment Bond.[1] At the time the Ratification Agreement was executed, the parties correctly noted that Hirschfeld had been "Paid to Date" $646,721.00, an amount that included the $268.073.00 paid in May 2005.

---

[1]   St. Paul subsequently paid Hirschfeld the $292,733.40.

The Trustee instituted an avoidance action in May 2006. In July 2006, the Bankruptcy Court ordered return of the funds, and in December 2006, Hirschfeld returned the $268,073.00 to the Debtor's bankruptcy estate.

St. Paul sued Hirschfeld in Texas state court for allegedly refusing to deliver certain specially fabricated steel for the NASA-1 project. The case was removed to the United States Bankruptcy Court on August 14, 2006, Hirschfeld filed an answer and a counterclaim. In its counterclaim, Hirschfeld sought *inter alia* to recover from St. Paul the amount avoided by the Trustee. The parties filed cross-motions for summary judgment, and the Bankruptcy Court held in St. Paul's favor. This appeal followed.

## II.    STANDARD OF REVIEW

The entry of summary judgment by the Bankruptcy Court is reviewed *de novo*. *See In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 328 (5th Cir. 2007). The reviewing court applies the same standard as the Bankruptcy Court. *See id.* (citing *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*; FED. R. CIV. P. 56(c). If the non-moving party fails to present evidence on an essential element of that party's case on which that party has the burden

of proof, there can be no genuine issue of material fact. *See Mabey v. Dixie Elec. Membership Corp.*, 2007 WL 2253503, *2 (5th Cir. Aug. 7, 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### III. ANALYSIS

#### A. The Ratification Agreement[2]

It is undisputed that, in Paragraph A of the Ratification Agreement, the parties agreed to a "statement of the Purchase Order account as of January 31, 2006," including a "Paid to Date" amount of $646,721.00. It is also undisputed that, when the parties entered into the Ratification Agreement, the "Paid to Date" amount was correct even though it included the $268,073.00 that was later subject to the Trustee's avoidance proceeding. Paragraph A also includes an agreed "Amount Currently Due" of $292,733.40.

The Ratification Agreement provides in Paragraph C that when St. Paul paid "the Amount Currently Due" as set forth above, Hirschfeld "fully and forever releases and discharges St. Paul from any and all claims, suits and actions arising against the Payment Bond for all labor and/or materials furnished to date by" Hirschfeld.

---

[2] The Ratification Agreement is attached to Hirschfeld's Motion for Summary Judgment in the Adversary Proceeding, *see* Ratification Agreement, Exh. A to Motion for Summary Judgment [Doc. # 21 in Adversary No. 06-3528], and is part of the designated record on appeal.

In Paragraph H of the Ratification Agreement, St. Paul agreed to pay Hirschfeld "in accordance to the terms and conditions of the Purchase Order." The parties specifically agreed in Paragraph A that the Amount Currently Due under the Purchase Order was $292,733.40.

### B.     Mutual Mistake

Hirschfeld argues that the Release should not be enforced or should be reformed because it was the result of a mutual mistake. For purposes of contract reformation, the "mutual mistake" must be made after the original agreement in reducing the original agreement to writing. *See Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex. App. – Austin 1999, no pet.). There is no allegation or evidence of a drafting mistake when the parties' agreement was reduced to writing.

Courts will not enforce an agreement "when parties to an agreement have contracted under a misconception or ignorance of a material fact . . . ." *Phoenix Network Tech. (Europe) Ltd. v. Neon*, 177 S.W.3d 605, 618 (Tex. App. – Houston [1st Dist.] 2005) (citing *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990)). "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, . . . but rather solely by objective circumstances surrounding" the contract's execution. *Id.* To establish "mutual mistake," there must be "(1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-

upon exchange." *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App. – Austin 1999, no pet.). The "mutual mistake" doctrine is not available simply to "avoid the results of an unhappy bargain." *Id.* at 781. The party asserting a mutual mistake has the burden of proof. *See Phoenix*, 177 S.W.3d at 618.

In this case, Hirschfeld asserts that the parties intended to require St. Paul to pay the full amount provided for under the original purchase order regardless of what that amount might be. Hirschfeld further contends that the parties believed, at the time they entered into the Ratification Agreement, that the full amount still due was $292,733.40. As was correctly noted by the Bankruptcy Court, Hirschfeld failed to present *any* summary judgment evidence to support this argument. The parties clearly and unequivocally agreed that $292,733.40 was the Amount Currently Due and further agreed that upon St. Paul's payment of that specific amount, Hirschfeld would release St. Paul from any additional liability under the Payment Bond.

This is not a case where the parties both failed to discover unknown facts. The parties both knew at the time they entered into the Ratification Agreement that Contractor Technology already had paid Hirschfeld $646,721.00. Moreover, Hirschfeld knew at the time it entered into the agreement that the Trustee was seeking the return of the $268,073.00 as a post-petition transfer. Hirschfeld believed that the Trustee would not succeed in its attempts to recover the funds, but Hirschfeld knew

that the $268,073.00 payment was being challenged and could potentially be recovered by the Trustee for the Debtor's estate.  Notwithstanding this undisputed knowledge, Hirschfeld agreed in the Ratification Agreement that $292,733.40 was the full Amount Currently Due and the defined amount St. Paul was required to pay to obtain a release from Hirschfeld.  If the parties' mutual intent was to require St. Paul to make full payment of the amount billed under the original purchase order with Contractor Technology, they could have included that provision in the Ratification Agreement.  They did not do so.  Instead, they agreed and contracted for St. Paul to pay a sum certain – $292,733.40.  The Bankruptcy Court's decision that Hirschfeld did not present evidence to show a "mutual mistake" was correct and is affirmed.

### C.    Payment Bond/Purchase Order

Hirschfeld notes correctly that St. Paul agreed in Paragraph H of the Ratification Agreement to pay Hirschfeld in accordance with the "Purchase Order."  Hirschfeld also notes correctly that the release in Paragraph C of the Ratification Agreement released only claims arising "against the Payment Bond," not arising under the "Purchase Order."  Based on these two provisions, Hirschfeld argues that even if it released St. Paul for liability under the Payment Bond, St. Paul assumed responsibility to pay in accordance with the "Purchase Order" and, therefore, St. Paul is required to pay the full amount owed by Contractor Technology under its original purchase order with

Hirschfeld. This argument, however, ignores the fact that in the Ratification Agreement, the parties' specifically defined the term "Purchase Order" to have an agreed "Amount Currently Due" of $292,733.40, an amount warranted by Hirschfeld to be accurate and truthful. *See* Ratification Agreement, ¶ B. St. Paul's obligation under Paragraph H was to pay in accordance with the "Purchase Order" as that term was limited by Paragraph A of the Ratification Agreement. The Bankruptcy Court noted correctly that Hirschfeld failed to present evidence that the parties intended, when they executed the Ratification Agreement, for St. Paul to pay more than that amount. The Court affirms the Bankruptcy Court's decision on this issue.

### D.   Consideration

Hirschfeld argues that the Release in Paragraph C of the Ratification Agreement is not enforceable because it is not supported by adequate consideration. The Court notes initially that Hirschfeld did not make this argument to the Bankruptcy Court and, therefore, it is waived. *See, e.g., Brown v. Ames*, 201 F.3d 654, 663 (5th Cir.), *cert. denied*, 531 U.S. 925 (2000); *Harris County v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 326 (5th Cir. 1999) (noting that generally, the appellate court "will not consider on appeal matters not presented to" the lower court).

Moreover, "[a] single consideration on the part of [St. Paul] is sufficient to support multiple promises . . . in the same contract." *See Rickey v. Houston Health*

*Club, Inc.*, 863 S.W.2d 148, 150 (Tex. App. – Texarkana 1993, writ denied); *Birdwell v. Birdwell*, 819 S.W.2d 223, 228 (Tex. App. – Fort Worth 1991, writ denied) (citing *Reeves v. Lago Vista, Inc.*, 497 S.W.2d 950, 954 (Tex. App. – Austin 1973, writ ref'd n.r.e.)).  In this case, the Release is only one provision of the Ratification Agreement.  In exchange for Hirschfeld's promises in the Ratification Agreement, including the specified release, St. Paul agreed to pay and in fact paid $292,733.40 to Hirschfeld, which was owed to Hirschfeld by Contractor Technology.  Consequently, there was adequate consideration to support both parties' obligations under the Ratification Agreement, including Hirschfeld's release.

### IV.   CONCLUSION AND ORDER

The Bankruptcy Court's April Opinion and corresponding Final Judgment in St. Paul's favor was correct.  Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's April 16, 2007 Memorandum Opinion and June 14, 2007 Final Judgment are **AFFIRMED**.  The Court will issue a separate Final Order.

SIGNED at Houston, Texas this **25th** day of **September, 2007**.

Nancy F. Atlas
United States District Judge